Nina Ringgold I am going to be reserving two minutes for rebuttal. I want to focus my arguments on two key issues. First, I want to highlight three fundamental errors I think but perceived throughout the pretrial and trial proceedings. And then I'd like to urge this Court to set forth the law in the circuit that pro se litigants are entitled to attorney's fees and costs under Rule 11. And that's a matter that hasn't been addressed by the circuit. The – first of all, the three fundamental errors I think are really important. They sort of focus the arguments in the brief is that that of the November 17, 1996 short sale contract, the cause of action for violation of the automatic bankruptcy state, and the World Savings Bank appraisal. First, as to the short sale contract, at the very commencement of the proceedings, each respondent was required by the automatic disclosures to disclose the short sale transaction. Citicorp claimed privilege and didn't produce a privilege log. Garcia, Grubb, and Ferrante, who were the alleged purchasers, did not – they didn't provide any verification for their disclosures. And what's really important is they also filed a motion to compel arbitration. I think what was really interesting in that motion was that in the evidentiary record at 25 point – at 28959, they actually indicate that I was  a party to the short sale transaction. Therefore, I couldn't state a claim for breach of contract. Well, as far as I can remember, women could own property. The deed was my community property, and I don't know how a short sale transaction could be taking place when I, as an owner, am not a party to the contract. Then we have Lockhart, who claimed a privilege and did produce documents, claimed a privilege. And then we have World Savings Bank, who refused to produce documents whether or not they were privileged. So during the whole time the district court was ruling on the four orders for dismissal orders, I was deprived of the opportunity to have the short sale transaction, to actually see it and the fundamental documents that were required for me to respond to those motions to dismiss. Then, as to the – then at the summary judgment level, the short sale contract again comes up again, with Stan Hicks claiming that this contract is attached to his declaration when it's not, as Exhibit C. Then at the trial proceedings, the trial – the short sale contract comes up again. And in error, the district court ruled that I was not allowed to have – require Citicorp to produce the short sale contract under a trial subpoena, and it ruled that the actual short sale transaction was irrelevant. And I think the case that I cited in my brief, which was Lamb v. Harborough, squarely shows – holds that the motive and intent for trespass is relevant, and the short sale transaction was demonstrating what was the motive and intent for the trespass. The violation of the automatic bankruptcy stay was a key issue throughout the proceedings. In the – at the point of the initial pretrial proceedings, the court ruled that without a motion under 12B3 or 28157, no motion being filed by the defendants to dismiss – to transfer the case to the bankruptcy court. The court's correspondence raised on its own motion that the violation of automatic bankruptcy stay cause of action would be dismissed. I had no opportunity to respond to that – to that cause of action, and that cause of action is integrally related. Could you just articulate to me again what, in your view, was the violation? Well, these real estate transactions that are taking place with respect to my property were taking place after I had filed bankruptcy. And at the point of filing bankruptcy in February of 1997, any transaction relating to my property would have been subject to the automatic bankruptcy stay. Instead, city court proceeded with a short sale transaction, misrepresented in a divorce proceeding as well as in the district – as well as in the bankruptcy court, misrepresented the value of the property and proceeded on with this transaction as if there wasn't a bankruptcy stay in effect. And the fundamental error of that at the trial level was that I asked in my motion in Lemonade No. 6 for the jury to have an instruction as to what was required under the bankruptcy stay. In other words, in March of 1997, World Savings Bank, James Garcia, had no business in my home because there was a bankruptcy stay in effect. If they thought they had approval of the bankruptcy court to be proceeding with a transaction, it required the bankruptcy court approval. Who gave them the key to the home? Well, the person who allegedly gave the key to the home was Stan Hicks, who was purporting to be a real estate agent acting on my behalf. However, the documents will show from Mason McDuffie that Mason McDuffie and Stan Hicks never had a fully executed listing agreement, which is required under California law that both owners execute a listing agreement. And they failed to have this alleged short sale transaction document in their file. Well, I understand that, but I'm talking about the invasion of privacy claim going into your home. Who gave Mr. Hicks the key? Well, at the point when I thought that they were going to be a listing agent, the listing, the real estate broker was provided with the key. However, that was based on the assumption that there was a fully executed listing agreement who had given the key. And I gave instructions, written instructions to the real estate broker not to allow anyone to enter the property unless I was physically present. So not only is there written instructions from me, to now that it's clear through their own admissions and discovery, there was never a fully executed listing agreement, which is required for a real estate agent to actually engage in selling a property. Thank you. I have a question, if you wouldn't mind entertaining one. It deals with Garcia as a witness. On page 56 of your brief, you say that it was over one-year sentence. The 50 on the red brief says it wasn't. Where in the record do I find whether or not Garcia's conviction was over a year? I think in a motion in limine number F, which was the motion in limine that was filed by James Garcia. Pre-trial, he had requested that the district court preclude any reference to his criminal conviction. And then, okay, I can find that, I guess. Then you indicate that under Rule 403, the district judge did no balancing. Is that correct? That's correct. And how do you come to that? Because he said, I'm not going to balance, or what? Well, at the pretrial conference, which is in the record at 313, specifically, every motion that was filed with respect to, I'm sorry, James Garcia's criminal conviction was addressed by the court. And in fact, my jury instruction requested that the court provide a limiting instruction. The court denied my request for a limiting instruction to the jury with respect to how the criminal conviction would be treated in his at the trial proceeding. And other than saying that simply that he was going to blankly deny any reference to it, the court did make it. And you didn't ask for a finding on balancing? I asked for a jury instruction to the jury. I understand what you told me. That is correct, you did not ask for a finding. I did. It was addressed in the, at the pretrial conference as to what factors would be considered. And other than saying that blankly that he did not. You see, what you told us is that he didn't balance. How do I know he didn't balance unless you ask for a finding? Well, I think that. Balancing is something district court judges do all the time. It's just in their head. How can we conclude he didn't? Well, I think that with respect to the motion in limine that was filed, as well as the opposition to the motion in limine, as well as the arguments that were presented at the pretrial conference. I also think that at the point where there was an inquiry at the trial proceeding asking for the, to inquire into matters relating to the conviction and the court denied the request, I think that those are the only opportunities where counsel can address that matter. And if the district court is not going to allow you to present that matter, that's. One final question. On page 81 of your brief, you want sanctions because you're pro se. I understood you're an attorney admitted to practice. That's correct. I'm acting, I'm an attorney, but I am also acting on my own behalf in this matter. And I think that with respect to the Rule 11 sanctions, I think that the court didn't, didn't not consider it to be first objectively reasonable that, it's not objectively reasonable that World Savings Bank would say that ostensible agency is a defense to trespass.  It's not objectively reasonable. Have you got a case, have you got a case that says that we give pro se sanctions when a person is admitted to practice in law? Yes, Your Honor. The cases that I cited in my brief is Shemekin v. Yemoff, which is the Eastern District of Pennsylvania, as well as the Second Circuit in Renenski v. James Hospital at 932 Fed Second 124. That's Second Circuit? It's the Second Circuit. Thank you. The Eleventh Circuit has recently addressed the issue and has decided that, has made a distinction between the fact of if someone is an attorney and acting in pro se, whether or not the attorney is claiming that they've lost income from, by being away from their practice. That's finding attorney's fees. Attorney's fees, yeah. Right. Versus being measured by loss income. Right. And I think that in my situation, my declaration specifically states, I'm requesting to be compensated for the financial loss as well as expenses. I'm requesting. I think we've got your point in mind, and you're beyond your time, but I'm going to give you a minute rebuttal. Thank you very much. And we'll also add time for them. How are the athletes going to divide their time? I'll steer you out. Good morning. May it please the Court. Walt Traber on behalf of Defendant World Savings Bank. Your Honors, in light of the number of issues and the number of parties, we had all conferred and felt it best to defer to the Court in terms of whether there are any specific questions or issues that the Court would like to have addressed and go from  there. It simply seemed too voluminous for each of us to make a presentation. Right. I have a question of Citi. Is that you? No. It never is. All right. Hold on behalf of Citi Mortgage. I would like to know what evidence there is that Citi hired people to collect the debt. It's an issue that kind of came through the briefs as I read them, but I couldn't put my finger on it. I'm not aware of that. I mean, I'm here on behalf of Citi Mortgage, but that's not a claim that was made. And I know you're well prepared for this argument, so you've gone through the briefs and the record. Is there any evidence that you know of, of Citi hiring people to collect the debt? Not to my knowledge, Your Honor. There's nothing in the record? Not to my knowledge, Your Honor. Okay. Thank you. That's the only one I had. I read all the briefs. Well, I suppose the only thing for rebuttal then would be if you had any citation or reference with respect to Judge Wallace's question. The question with respect to the collection of the debt. Oh, with respect to the debt. Is there any evidence of that? Yes, Your Honor. Your Honor, I think that as a matter of law, a short sale transaction can be treated as a form of debt collection. In this circumstance, real estate brokers, just like attorneys, are not exempt from the Fair Debt Collection Practices Act. Here, Citi Corp., without a listing agreement, without me being involved in a short sale, entered into a short sale transaction with James Garcia and Anthony Ferrante. A short sale usually arises after there's been a default or an institution of foreclosure proceedings. A short sale transaction is when the amount of the mortgage is less, the value of the property is less than the amount of the mortgage. The payoff of the loan requires that certain lien holders will be paid off as well as any debt against the property. So, in fact, if the owner of the property has not engaged in a contract to actually sell their property, in essence, a short sale transaction results in a payoff of the lender, which is a form of debt collection. So you're just saying it's tantamount to a debt collection by virtue of its form. Correct. The case of, I think it's Romaine v. Western Union, where the ninth, I believe, of this circuit held that the actual physical, the act of certain ways of handling the telegram situation, the Western Union, resulted in a form of debt collection. Thank you. I appreciate your argument. The case just argued of Ringgold v. Garcia is submitted. We're adjourned for the morning. All rise. Thank you.
judges: Wallace, D.W. Nelson, McKeown